IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| BOTTOM LINE, INC., ) | |
| ) | |
| Plaintiff, ) | Case No. 15-445 L |
| ) | |
| v. ) | Hon. Eric G. Bruggink |
| ) | |
| THE UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## UNITED STATES' MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF DAVID HAMILTON

Defendant United States moves to exclude the opinions and testimony of Plaintiff's expert, David Hamilton, disclosed in an undated expert report. *See* Def. Ex. 1 ("Hamilton Report"). Mr. Hamilton's expert report, entitled, "Investigation and Findings into U.S. Army Corps of Engineers-Related Flooding," reviews U.S. Army Corps of Engineers ("Corps") flowage records and websites and concludes that the Corps' operation of the McClellan-Kerr Arkansas River Navigation System ("the river system") constituted a taking of Plaintiff's property. Mr. Hamilton's opinions and testimony are irrelevant and unreliable.

First, regarding relevancy, Mr. Hamilton's report and opinion testimony—lacking a methodology that distinguishes natural flows from operational flows—does not and cannot help the trier of fact to understand the evidence or to determine a fact in issue. Because Mr. Hamilton fails to compare and draw a distinction between natural and operational flows, his report and testimony cannot answer the central question of causation. That Mr. Hamilton first prepared the report in 2011—several years prior to Plaintiff filing the Complaint in this

1

matter—and to note instances of flooding on the subject property as opposed to the cause of flooding on the same, may help explain why the report does not answer the question of causation. *See* Def. Ex. 2 ("Hamilton Deposition Day One") at 25:3-6 ("It was more or less a finished report back in late 2011"), 25:7-11 (acknowledging that the purpose of the report "was just to provide my client with a warning that he's got issues here with recurrent flooding"). Regardless, Mr. Hamilton's report and opinion testimony do not relate to an issue this Court must resolve and are, therefore, not helpful to the Court.

Second, regarding reliability, Mr. Hamilton's report attributes the alleged damages to the subject property to the Corps' operation of the river system. Def. Ex. 1 at 7. But Mr. Hamilton does not apply any methodology to reach that conclusion, let alone a reliable one. Def. Ex. 2 at 51:15-23 (acknowledging that he did not apply a before and after methodology because it "didn't really apply in this case"). Based only on his subjective belief, Mr. Hamilton concludes that the subject property has frequently and repeatedly experienced flooding above a certain water surface elevation, and—without applying a methodology that distinguishes natural flows from operational flows—he attributes that flooding to the Corps' operation of the river system. *See* Def. Ex. 3 ("Hamilton Deposition Day Two") at 15:14-16:10 (stating that he concluded it was the Corps' operations causing the alleged damages because it is "self-evident … to anyone that looks at the lake there"). Mr. Hamilton's unsupported speculation is insufficient to satisfy Federal Rule of Evidence 702.

For at least these reasons, Mr. Hamilton's report and opinion testimony are irrelevant and unreliable and should be excluded.

**LEGAL STANDARD**

The Rules of the Court of Federal Claims ("RCFC") empower this Court to make pretrial rulings that simplify issues for trial. RCFC 16; *Baskett v. United States*, 2 Cl. Ct. 356, 359 (1983). "This power allows the court, inter alia, to define the issues, facts, and theories actually in contention and to weed out extraneous issues." *Baskett*, 2 Cl. Ct. at 359. A motion in limine is one method by which a party can obtain such pre-trial rulings. *Weeks Dredging & Contracting, Inc. v. United States*, 11 Cl. Ct. 37, 45 (1986). The RCFC anticipates that courts will consider the types of issues presented in this motion before trial, including the "admissibility of evidence," "avoiding unnecessary proof and cumulative evidence, and limiting use of testimony under Federal Rule of Evidence 702." RCFC 16 (c)(2)(C)–(D).

Federal Rule of Evidence 702 permits an expert whose qualifications are accepted by the Court to offer opinions so long as:

> "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid 702(a)-(d). Rule 702 demands that a trial judge act as a "gatekeeper" and ensure that the proffered testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 580, 597 (1993).

The admissibility of expert testimony under Rule 702 turns on "the relevance and helpfulness of an expert's testimony, its reliability, and whether the basis of her opinion is one reasonably relied upon by experts in her field." *Ind. Mich. Power Co. v. United States*, 60 Fed. Cl. 639, 646-47 (2004) ), *aff'd,* 422 F.3d 1369 (Fed. Cir. 2005) (quoting *Daubert*, 509 U.S. at 589). Reliability under Rule 702 requires testimony to be grounded "in the methods and

procedures of science," rather than "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. An expert's mere "say so" is insufficient to satisfy Rule 702. *See Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997) (explaining that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

To assist the assessment of reliability, the Supreme Court in *Daubert* identified four nonexclusive factors that a trial court may consider: (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community. *See id.* at 593-94. The list is not exhaustive, and the Court has discretion to consider a variety of other factors. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("[W]e can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert* . . . . Too much depends upon the particular circumstances of the particular case at issue."). Rule 702 requires the Court to "scrutinize not only the principles and methods used by the expert, but also whether those principles and methods have been properly applied to the facts of the case." Fed. R. Evid. 702, Advisory Committee Notes to 2000 Amendments; *see also Gen. Elec. Co.*, 522 U.S. at 146 ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

Additionally, trial courts must ensure that expert testimony is not just reliable, but relevant to the task at hand. *Kumho Tire*, 526 U.S. at 14; *Daubert*, 509 U.S. at 589. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without

4

the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Federal Rule of Evidence 702 places limits on expert witness testimony by requiring, among other things, that the expert testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *Daubert*, 509 U.S. at 591. Expert testimony that does not relate to an issue in the case is not relevant and therefore not helpful to the Court. *Daubert*, 509 U.S. at 591; *see Jicarilla Apache Nation v. United States*, 126 Fed. Cl. 118, 121 (2016) (excluding as irrelevant expert testimony that was not "of consequence in determining the action" in advance of trial) (internal quotation omitted).

## ARGUMENT

Expert testimony is admissible only if it is both relevant and reliable. *See Kumho*, 526 U.S. at 141. Mr. Hamilton's report and opinion testimony are neither. For that reason they should be excluded.

### A. Mr. Hamilton's Report and Opinion Testimony Fail to Address the "Before Condition" and are Thus Irrelevant to But-For Causation

Though Mr. Hamilton's report purports to be "a description of the property with its relationship to the river surrounding it, and findings of involvement from [the Corps] of flooding [the subject property] in its operations of the river system," Def. Ex. 1 at 1, the report does not address but-for causation, a threshold relevancy issue that Mr. Hamilton acknowledges he failed to consider. *See* Def. Ex. 3 at 13:13-21. The report does not, for instance, model and compare flows resulting from the Corps' operations as against flows that would occur without the river system, or a project within that system. Rather, Mr. Hamilton's purported findings are based on, in his words, "self-evident" observation, *see id.* at 15:14-16:10, and a reliance on a report that he did not author that pre-dates the alleged flooding by at least nineteen years, *see* Def. Ex. 1 at 3, neither of which he applies to address but-for causation.

Causation analysis requires the plaintiff to establish what damage would have occurred without government action, *see*, *e.g.*, *St. Bernard Parish Govt. v. United States*, 887 F.3d 1354, 1363 (Fed. Cir. 2018), but Mr. Hamilton's report and opinion testimony address only those damages he attributes to Corps operations. The report does not establish what damages would have occurred without the Corps' operation of the river system, or any project within that system. For instance, the report purports to review Corps operations based in part on a nineteen-year-old Corps study, *see* Def. Ex. 1 at 3-5 ("Reviews of ACOE Operations"), but it does not compare the damages it alleges are attributable to Corps operations to any damages that would have occurred absent those same operations.

Though Mr. Hamilton fails to address but-for causation, he does opine on issues he does not appear qualified to testify about, including whether "'[e]state-type' houses on riverbanks are an accepted and viable type of residential development," whether "well-to-do purchasers of these kinds of riverbank lots are willing to forego the usual flood protections found in ordinary developments for the benefits of living close by the water[,]" and whether such purchasers "sacrifice … the freedom to live in their homes uninterrupted by emergency evacuations caused by floods." *See* Def. Ex. 1 at 6. Not only does Mr. Hamilton appear unqualified to testify about these appraisal issues, but such issues are not relevant to whether the United States is liable for a taking in this matter.

Summarily, Mr. Hamilton's report and opinion testimony cannot help the trier of fact resolve the threshold issue of but-for causation by addressing only the "after condition." Though the report concludes that "damages to [Plaintiff's] real estate interest (additional flowage easement and erosion) are the direct and proximate result of [the Corps'] … operation, regulation, and control of [the river system]," *see id.* at 7, Mr. Hamilton neither provides nor

6

analyzes a "before condition" that could support that conclusion. Thus, Mr. Hamilton's report and opinion testimony are irrelevant to causation and they should be excluded.

### B.     Mr. Hamilton Fails to Apply a Reliable Methodology

Mr. Hamilton's report and testimony are grounded not in the methods and procedure of science but on personal observations, *see* Def. Ex. 1 at 1-3 ("Observations and Measurements of Flooding"), and a review of a decades-old Corps report, *see id.* at 3-5 ("Reviews of ACOE Operations"), which he refers to only to provide some "after condition" analysis. They should be excluded for that reason.

Mr. Hamilton's report and testimony meet none of the four *Daubert* factors for reliability. *Daubert*, 509 U.S. at 593-94. The report states that "it became evident through observation and measurement that the property was being inundated with flow from the Arkansas River at an unexpected frequency and to a higher level than that prescribed for in the ACOE flowage easement." Def. Ex. 1 at 1. The report attributes this inundation to the Corps' operation of the river system without a methodology that accounts for flows that would have occurred in the "before condition." *See*, *e.g.*, *id.* at 2 ("The significant change in the riverbank and elevations are due to erosion caused by the ACOE and speaks for itself"). One cannot (1) test or (2) peer review personal observations and opinions that flooding and erosion "speaks for itself," just as one cannot (3) ascribe a potential rate of error with the same or (4) determine whether the scientific community has accepted the way in which Mr. Hamilton has applied his personal observations of flooding to any "after condition" causation analysis.

Mr. Hamilton failed to model any "before condition" or "after condition" scenarios that might otherwise meet these *Daubert* factors. Instead, he bases his opinions and testimony on a limited set of flow data from 1989 to 2011. *Id.* at 5-6. Mr. Hamilton then seeks to corroborate

7

his opinions and testimony regarding that flow data by reviewing a now decades-old Corps study that could not have accounted for that flow data in its modeling and analysis. *Id.* at 3-5. Rule 702 requires the Court to "scrutinize not only the principles and methods used by the expert, but also whether those principles and methods have been properly applied to the facts of the case." Fed. R. Evid. 702, Advisory Committee Notes to 2000 Amendments; *see also Gen. Elec. Co.*, 522 U.S. at 146 ("A Court may conclude that there is simply too great an analytical gap between the data and the opinions proffered."). If Mr. Hamilton's personal observations and recitation of a limited set of flow data is a method, he attempted to support that method by reference to a decades-old report that did not, and could not have, accounted for the facts of the case. Ultimately, Mr. Hamilton's conclusion that the Corps is flooding the subject property is nothing more than an *ipse dixit* that is inappropriate for an expert report.

## CONCLUSION

Expert testimony is only admissible if it is both relevant and reliable. *See Kumho*, 526 U.S. at 141. For the foregoing reasons, Mr. Hamilton's expert report and opinion testimony fail to meet that standard and should therefore be excluded.

Dated: June 30, 2023

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

/s/ *Christopher M. Chellis*
CHRISTOPHER M. CHELLIS
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 305-0245
Fax: (202) 305-0506

christopher.chellis@usdoj.gov

*Counsel for the United States*